UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------- X

FRANK L. ROMERO, Individually and on
Behalf of All Others Similarly Situated,    :    Case No.: _____

:

:    **CLASS ACTION COMPLAINT**

Plaintiff,    :

:    **DEMAND FOR JURY TRIAL**

-against-    :

:

COMTECH TELECOMMUNICATIONS
CORP. and FRED KORNBERG,    :

:

Defendants.    :

-------------------------------------- X

Plaintiff, Frank L. Romero ("Plaintiff"), on behalf of himself and all others similarly

situated, by his undersigned attorneys, alleges upon personal knowledge with respect to himself,

and information and belief based upon, *inter alia*, the investigation of counsel as to all other

allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff, on behalf of himself and all others

similarly situated, against Comtech Telecommunications Corp. ("Comtech") and its Chairman of

the Board and Chief Executive Officer Fred Kornberg ("Kornberg" and together with Comtech,

the "Defendants") for violations of Section 14(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection

with the materially incomplete and misleading proxy statement/prospectus concerning the

proposed merger (the "Proposed Merger") between Gilat Satellite Networks Ltd. ("Gilat") and

Comtech.

2.      On January 29, 2020, Comtech and Gilat entered into an Agreement and Plan of

Merger (the "Merger Agreement"), pursuant to which Gilat's shareholders will receive a

combination of  (i) $7.18 in cash and (ii) 0.08425 shares of Comtech common stock in exchange for each share of Gilat common stock they own (the "Merger Consideration"). Comtech and Gilat have told shareholders that the implied value of the Merger Consideration is $10.25 per Gilat common share.

3.        On April 3, 2020, to convince Gilat shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement/prospectus (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Section 14(a) of the Exchange Act. In particular, the Proxy contains misleadingly incomplete information concerning Comtech's material financial projections.

4.        The special meeting of Gilat shareholders to vote on the Proposed Merger is set for May 8, 2020 (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

5.        For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Section 14(a) of the Exchange Act.  Plaintiff seeks to preserve the status quo and enjoin the consummation of the Proposed Merger until the material information discussed herein is disclosed to Gilat's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the violations of the Exchange Act.

## JURISDICTION AND VENUE

7.        This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act.

8.      Personal jurisdiction exists over Defendants because each defendant conducts business in or maintains operations in this District, or is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendants by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a holder of Gilat common stock.

11.      Defendant Comtech provides communications solutions for both commercial and government customers worldwide. The principal executive offices of Comtech are located at 68 South Service Road, Suite 230, Melville, NY, 11747. Comtech's common stock trades on the Nasdaq stock exchange under the ticker symbol "CMTL".

12.      Individual Defendant Kornberg is, and has been at all relevant times, the Chairman of the Board and Chief Executive Officer of Comtech.

13.      Together Comtech and Kornberg are referred to herein as the "Defendants."

## NON-PARTIES

14.      Gilat is a global provider of satellite-based broadband communications. The principal executive offices of Gilat are located at Gilat House, 21 Yegia Kapayim Street, Daniv Park, Kiryat Arye, Petah Tikva 4913020, Israel. Gilat common stock trades on the Nasdaq stock exchange under the ticker symbol "GILT".

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders as of April 8, 2020 of Gilat common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants or Gilat.

16.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of March 30, 2020, there were 55,493,258 Gilat Shares outstanding and entitled to vote. The Gilat Shares are held by thousands of individuals and entities—the actual number of public shareholders of Gilat will be ascertained through discovery;

(b)     The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

1.  Whether Defendants have violated Section 14(a) of the Exchange act and/or Rule 14a-9 promulgated thereunder;

2.  Whether the Individual Defendant has violated Section 20(a) of the Exchange Act; and

3.  Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated;

(d)      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### I.      Background and the Proposed Merger

15.      Gilat is a provider of satellite-based broadband communications. The Company operates through three segments: Commercial, Mobility and Services divisions. The Company designs and manufactures satellite ground segment and networking communications equipment, which it sells to its customers either as network components (modems, Block Up converters (BUCs), antennas) or as complete network solutions (which include hubs and related terminals and services) or turnkey projects. The equipment that the Company develops includes commercial Very Small Aperture Terminals (VSAT) systems, defense and homeland security satellite communications systems, solid-state power amplifiers (SSPAs), BUCs, low-profile antennas, on-the-Move/on-the-Pause terminals and modems. The Company's equipment is used by satellite operators, service providers, telecommunications operators, system integrators, government and defense organizations, large corporations and enterprises.

16.      Comtech designs, develops, produces and markets products, systems and services

for communications solutions. The Company operates through two segments: Commercial Solutions and Government Solutions. It offers communications solutions, including command and control technologies, safety and security technologies and enterprise technologies. Its Commercial Solutions segment provides satellite communications (such as satellite earth station modems and traveling wave tube amplifiers), public safety systems (such as next generation 911 technologies) and enterprise application technologies (such as messaging and trusted location-based technologies). The Government Solutions segment includes command and control technologies, troposcatter technologies, and radio frequency power and switching technologies. It serves system and network suppliers in the global satellite, defense, broadcast and aerospace industries, and the United States federal government, among others.

17. On January 29, 2020, Comtech and Gilat issued a joint press release announcing the Proposed Merger, which states in relevant part:

**Comtech Telecommunications Corp. to Acquire Gilat Satellite Networks for $532.5 Million in a Strategic and Cash Accretive Transaction The transaction reflects a company value of approximately $577.3 million**

**MELVILLE, N.Y., and PETAH TIKVA, ISRAEL; January 29, 2020 7:00 A.M. ET** -- Comtech Telecommunications Corp. (Nasdaq: CMTL) ("Comtech") and Gilat Satellite Networks Ltd. (Nasdaq: GILT; TASE: GILT) ("Gilat") jointly announced today that Comtech has agreed to acquire Gilat in a cash and stock transaction for $10.25 per Gilat ordinary share of which 70% will be paid in cash and 30% in Comtech common stock, resulting in an enterprise value of approximately $532.5 million. Founded in 1987 with its headquarters in Israel, Gilat is a worldwide leader in satellite networking technology, solutions and services with market leading positions in the satellite ground station and in-flight connectivity solutions markets and deep expertise in operating large network infrastructures.

Based on Comtech's fiscal year 2019 actual results and Gilat's trailing twelve-month results through June 30, 2019, on a pro-forma basis, Comtech would have reported approximately $926.1 million of revenue with Adjusted EBITDA of approximately $130.2 million (see definition and reconciliation to GAAP financial measures in the table below). The combined companies would employ approximately 3,000 people and offer best-in-class satellite technology, public

safety and location technology and secure wireless solutions to commercial and government customers around the world.

Fred Kornberg, Chairman of the Board and CEO of Comtech, said, "I am excited to have reached this agreement with Gilat and believe this combination is beneficial to the stakeholders of both companies. The acquisition better positions Comtech to take advantage of key marketplace trends, particularly the growing demand for satellite connectivity and the enormous long-term opportunity set that is emerging in the secure wireless communications market. I believe that the combination of accelerating satellite connectivity demand and the increasing availability of low-cost satellite bandwidth, makes this a perfect time to unify Comtech and Gilat's solutions and offer our combined customers best-in-class platform-agnostic satellite ground station technologies. Gilat is an exceptional business that has developed extraordinary technology and has a well-respected product portfolio supported by strong research and development capabilities. I welcome Gilat's entire talented workforce to the Comtech family."

Dov Baharav, Chairman of the Board of Gilat, said, "The Gilat Board of Directors and management believe this highly strategic combination is compelling. It is an excellent outcome for our shareholders who receive both cash and an equity interest in a strong company with a broader range of products and the benefits of combined expertise and resources that is well positioned to create future value against a highly favorable industry backdrop. I have long admired Comtech's commitment to technology leadership and I firmly believe that employees will have expanded opportunities for career development. No doubt, the future will be very bright for Comtech and Gilat and all of our stakeholders."

**Key Strategic Benefits for Comtech Include:**

•       Drives global market access by creating a world leader with combined pro-forma sales approaching nearly $1.0 billion annually;

•       Strengthens Comtech's position as a leading supplier of advanced communication solutions, uniquely capable of servicing the expanding need for ground infrastructure to support both existing and emerging satellite networks;

•       Expands Comtech's product portfolio with highly complementary technologies, including Gilat's high-performance TDMA-based satellite modems and its next generation solid-state amplifiers;

•       Broadens leadership position in the rapidly growing in-flight connectivity and cellular backhaul markets which are expected to expand given the availability of lower-cost bandwidth and the adoption of satellite technologies into the 5G cellular backhaul ecosystem;

•       Bolsters world-class research and development capabilities, enabling

Comtech to offer customers more complete end-to-end technology solutions;

•      Enhances ability to accelerate shareholder value creation by contributing to Comtech's ongoing strategy to move toward higher margin solutions and by increasing customer diversification geographically and by market; and

•      Potentially offers increased liquidity for existing and new Comtech shareholders, as Comtech plans to pursue a dual listing on the Nasdaq and Tel Aviv Stock Exchange ("TASE") to become effective upon the closing of the transaction.

**Acquisition Expected to be Cash Accretive and Have Minimal Integration Risks**

Excluding the impact of acquisition plan costs (including transaction expenses) and with conservative anticipated synergies of only $2.0 million derived from the elimination of Gilat's public company costs, the acquisition of Gilat is expected to be cash accretive to Comtech during the first twelve months post-closing. Comtech believes that with careful planning and execution, it can capitalize on opportunities to achieve both sales growth and further efficiencies during the second-year post-closing.

Both companies' talented global workforces are expected to remain in place and focus intently on meeting all customer commitments and expectations, including supporting all existing products, services and agreements. The transaction enlarges Comtech's global market footprint with a significant physical presence in key international markets. This increased presence addresses a growing need for local touch points that can offer integrated secure connectivity solutions including public safety and location solutions. At the same time, Gilat will gain access to Comtech's strong relationships with the U.S. government, allowing expanded distribution of Gilat's products and solutions to the U.S. government. As such, Comtech believes the transaction carries minimal integration risk while creating numerous opportunities for potential long-term revenue and efficiency synergies going forward.

Comtech will continue to emphasize capturing growth opportunities from favorable market trends, including: expected increased demand for solutions to provide high speed in-flight satellite connectivity; the adoption of new satellite ground station technologies into the 5G cellular backhaul eco-system; and the expected need for equipment and network upgrades to accommodate an anticipated increase in satellite capacity when new Very High Throughput Satellites ("VHTS") and high capacity Medium Earth Orbit ("MEO") and Low Earth Orbit ("LEO") satellite constellations are launched and fully operational.  Together with its previously announced pending acquisition of UHP Networks, Comtech believes it will be uniquely positioned to take advantage of these important trends.

Gilat announced on November 19, 2019 that it expects to achieve sales of between

$260.0 million and $270.0 million with Adjusted EBITDA ranging from $38.0 million to $42.0 million for its fiscal year ended December 31, 2019. Comtech announced on December 4, 2019 that it expects to achieve sales of between $712.0 million and $732.0 million with Adjusted EBITDA ranging from $99.0 million to $103.0 million for its fiscal year ending July 31, 2020. Neither Comtech nor Gilat is revising their previously announced respective fiscal year financial outlook.

In light of the agreement between Comtech and Gilat, Gilat has cancelled its fourth quarter and fiscal 2019 year-end conference call and webcast previously scheduled for February 19, 2020. Once the transaction closes, Comtech will provide combined revenue, Adjusted EBITDA and diluted earnings per share guidance in a future announcement.

**Leadership and Business Structure**

Fred Kornberg, Comtech's Chairman of the Board and Chief Executive Officer ("CEO") will continue in his role as CEO of the combined company. Michael Porcelain, Comtech's Chief Operating Officer, who was promoted and named President of Comtech earlier today, will work hand-in-hand with both Comtech and Gilat employees to maximize the potential of the combined company. Michael Bondi will continue in his role as Chief Financial Officer ("CFO") of the combined company. Comtech will continue to maintain its headquarters in Melville, New York.

Post-closing of the transaction, Gilat will become a wholly owned subsidiary of Comtech and will maintain its well renowned and highly regarded brand. Gilat will continue to maintain its corporate headquarters and research and development facility in Petah Tikva, Israel under the leadership of Yona Ovadia, Gilat's CEO and Adi Sfadia, Gilat's CFO. Mr. Sfadia will also be assuming the role of Gilat's Chief Integration Officer, helping to plan a smooth acquisition and to maximize shareholder value.

No Comtech or Gilat facility locations are expected to be closed as a result of the transaction and each key business area is expected to continue to be led by its respective existing proven leadership teams after the transaction closes.

**Transaction Structure and Terms**

Under the terms of the agreement, unanimously approved by both companies' Board of Directors, Gilat shareholders will receive total consideration of $10.25 per share, comprised of $7.18 per share in cash and 0.08425 of a share of Comtech common stock for each share of Gilat held.

The total consideration of $10.25 represents a premium of approximately 14.52% to Gilat's 90-day volume-weighted average trading price.

Upon completion of the transaction, Gilat's shareholders will own approximately 16.1% of the combined company.

**Financing and Acquisition Plan Expenses**

As of September 30, 2019, Gilat had approximately $53.1 million of unrestricted cash and cash equivalents with debt of approximately $8.2 million. As of October 31, 2019, Comtech had approximately $46.9 million of cash and cash equivalents and debt of approximately $169.0 million.

Comtech expects to fund the acquisition and related transaction costs by redeploying a portion of the $100.0 million of pro forma combined cash and cash equivalents plus additional cash expected to be generated prior to closing, and by drawing on a new $800.0 million secured credit facility to be provided by Citibank, N.A., Manufacturers and Traders Trust Company ("M&T Bank"), Santander Bank, N.A., BMO Harris Bank, N.A. ("Bank of Montreal"), Regions Bank, Israel Discount Bank of New York and Goldman Sachs Bank USA. Comtech expects that the cash interest rate on this facility will approximate 4.0% to 5.0% on an annual basis, before any origination fees. Furthermore, Comtech expects the terms of the facility will be based on a net leverage ratio providing significant flexibility. The exact terms of the credit facility will be finalized at or prior to the closing of the acquisition.

On a pro forma basis including preliminary estimated combined acquisition plan expenses of approximately $27.0 million, the repayment of Gilat bank debt and funding of Comtech's other pending acquisitions, Comtech would have approximately $45.0 million of unrestricted cash at closing with total net debt of approximately $500.0 million or net leverage of 3.85x. Total net debt is expected to decrease quickly and significantly.  Based on expected strong cash flows to be generated from the combined businesses, net leverage twelve months after closing will decrease to approximately 3.00x.

Comtech expects that it will maintain its annual targeted dividend of $0.40 per share.

In connection with the acquisition of Gilat, Comtech expects to incur acquisition plan expenses (including professional fees for financial and legal advisors and debt refinancing costs). Some of these expenses are expected to be immediately expensed both prior to and upon closing, another portion expensed during the first year following the closing and the balance capitalized.  Pursuant to accounting rules, the acquisition is expected to result in a material increase in annual amortization expense related to intangibles and other fair value adjustments.

18.     The Merger Consideration represents inadequate compensation for Gilat shares.

Indeed, Gilat has announced positive financial results for the three consecutive 2019 quarters

leading up to the Proposed Merger.

19.     Furthermore, because of the lack of a price collar, Gilat shareholders are presently expected to end up with significantly less than the $10.25 implied value of the Merger Consideration that has been touted to them.  When the Merger Agreement was signed, Comtech's stock was trading at $37.10. By March 4, 2020, Comtech's stock price dropped to $29.01, and it has continued to drop since that date. As a result, Gilat shareholders are not really going to end up with $10.25 in Merger Consideration. As of May 6, 2020, the implied value of the Merger Consideration was $8.61, which is far below fair value for Gilat shares. Indeed, prior to the announcement of the Proposed Merger, Gilat shares were trading at over $10 per share, and were undervalued even at that price given Gilat's strong stand-alone growth prospects.

20.     Indeed, Comtech recognizes that the Proposed Merger will provide it with a significant windfall while shortchanging Gilat stockholders. In its March 31, 2020 press release providing an update on the status of the transaction, Comtech stated that "the recent price decline in Comtech shares will have no impact on the number of shares to be issued to Gilat shareholders as merger consideration because Gilat and Comtech agreed to a fixed exchange ratio under the merger agreement. As such, the number of shares issuable to Gilat shareholders upon the close of the acquisition will approximate less than 20% of Comtech's total shares outstanding."

21.     In the same press release, Defendant Kornberg indicated that Comtech is purportedly well-positioned to weather the global economic downturn caused by the coronavirus. He stated: "Although Comtech is not immune to the disruption in the macroeconomic environment caused by the coronavirus, I believe Comtech's long-term fundamentals remain excellent given its innovative and diversified product portfolio and its talented employees." Of course, without access to the Comtech Financial Projections (defined below), Gilat shareholders have no way of assessing

the veracity of Kornberg's statement and understanding Comtech's long-term value for themselves, which is plainly material.

22.     In sum, if consummated, the Proposed Merger will significantly undercompensate Gilat stockholders for the fair value of their shares. It is imperative that Gilat shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for Gilat shareholders to properly assess the value of their shares and exercise their corporate suffrage rights.

## II.     The Proxy Omits Material Information

23.     On April 3, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Proxy seeks to solicit the necessary proxy votes from Gilat shareholders to approve the Merger Agreement and consummate the Proposed Merger. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy omits Comtech's financial projections which are necessary for Gilat's shareholders to cast an informed vote on the Proposed Merger.

24.     In connection with the execution of the Proposed Merger, Comtech provided certain financial forecasts and estimates (the "Comtech Financial Projections") to Gilat's financial advisor, Jefferies LLC ("Jefferies"). Comtech's senior management and Jefferies then held discussions regarding the Comtech Financial Projections and Comtech's businesses, operations, and prospects. Jefferies then utilized the Comtech Financial Projections in performing its analyses which were used to support its opinion that the Merger Consideration was "fair" to Gilat shareholders.

25.     The Proxy discloses the financial projections for Gilat prepared by Gilat

management and utilized by Jefferies in its valuation analyses, but Defendants withheld, and the Proxy fails to disclose, the Comtech Financial Projections. The Comtech Financial Projections are material as they speak squarely to the question that the Company's shareholders must answer in determining how to vote on the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Given the stock component of the Merger Consideration, Gilat shareholders need to know the value of the Comtech stock. Without the Comtech Financial Projections, the Proxy presents the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger.

26.     The Proxy also describes Jefferies' fairness opinion and the various valuation analyses performed in support of their opinion.  In the summary of the valuation analyses provided in the Proxy, the stock component of the Merger Consideration is valued simply by multiplying the exchange ratio by the trading price of Comtech stock on January 28, 2020. This is improper and misleads shareholders for multiple reasons.

27.     First, given the lack of a collar on the fixed exchange ratio, this valuation method would fluctuate wildly with changes in trading price of Comtech stock. This is perfectly illustrated here. Since January 28, 2020, the price of Comtech stock has fallen from $37.10 per share to $17.05 per share as of May 6, 2020. Accordingly, the value of the Merger Consideration under this methodology has fallen from $10.31 to $8.61—a price that falls below several of the fairness ranges found by Jefferies.

28.     Second, under sound corporate finance theory, the value of corporation should be premised on the expected future cash flows of the corporation. Thus, without Comtech's expected cash flows—or any financial projections at all—it would be impossible for shareholders to

properly value Comtech stock and the stock component of the Merger Consideration. Simply put, perhaps nothing is more relevant for making a merger decision than the financial projections of the acquiring company, at least to a shareholder of the company being acquired.

29.     The Proxy concedes the materiality of Jefferies' fairness opinion and its valuation analyses by citing them among the "material" factors Gilat's board of directors considered in making its recommendation to Gilat shareholders. Proxy at 53; *see also* Proxy at 61 ("The summary of the financial analyses described under "— Financial Analyses" is a summary of the material financial analyses . . . ."). However, the summary of Jefferies' fairness opinion and financial analyses provided in the Proxy fails to include the Comtech Financial Projections—key inputs underlying the analyses. Without this information Gilat shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Jefferies' fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 61 ("Considering the data below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Jefferies' financial analyses.").

30.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy is to put all one's cards on the table face-up. Here, only some of the cards were exposed— the others were concealed. If a proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, by omitting the Comtech Financial Projections, multiple statements in the Proxy were rendered misleadingly incomplete.

## COUNT I
## Violations of Section 14(a) of the Exchange Act

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

34.     Defendants issued the Proxy and/or permitted the use of their name in the Proxy with the intention of soliciting Gilat's common shareholders' support for the Proposed Merger. Individual Defendant Kornberg reviewed and authorized the dissemination of the Proxy, which fails to provide the Comtech Financial Projections.

35.     Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Defendants were aware of the Comtech Financial Projections but failed to disclose them in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to disclose such information to shareholders despite the ability to do so without extraordinary effort.

36.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, Individual Defendant Kornberg was intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Comtech Financial Projections.

37.     The Defendants are liable for the above-referenced material omissions and misleading statements in the Proxy because they "permit[ed] the use of [their] name to solicit any proxy or consent or authorization in respect of any security", in violation of Section 14(a)(1) of the Exchange Act.  There was a substantial connection between the use of the Defendants' names and the solicitation effort. Comtech was aware of the material omissions and misleading statements in the Proxy, as its executive officers and/or directors created or were provided with or had access to the Comtech Financial Projections.  Comtech nevertheless filed the misleadingly incomplete Proxy with the SEC on March 2, 2020. Moreover, Individual Defendant Kornberg was referenced throughout the Proxy, was a key figure in the sales process leading up to the execution of the Merger Agreement, and signed the Proxy on behalf of Comtech.

38.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Gilat's shareholders.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger until Comtech discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: May 6, 2020                          **MONTEVERDE & ASSOCIATES PC**

                                            */s/ Juan E. Monteverde*
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*